### Harry Rembert v. The State.

No. 1950. Decided June 26, 1912.

**Murder—Charge of Court—Murder in Second Degree—Manslaughter—Self-Defense.**

Where, upon trial of murder, the case was submitted to the jury upon facts not borne out by the record, and upon issues not suggested by the testimony, there was reversible error.

Appeal from the District Court of Wichita. Tried below before the Hon. Jo. A. P. Dickson.

Appeal from a conviction of murder in second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Mathis & Kay*, for appellant.—On question of the court's charge: Condron v. State, 62 Texas Crim. Rep., 485, 138 S. W. Rep., 594; Bibby v. State, 65 S. W. Rep., 193; Cecil v. State, 72 S. W. Rep., 197; Mitchell v. State, 33 S. W. Rep., 367; Renner v. State, 65 S. W. Rep., 1102.

*C. E. Lane*, Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the second degree and given ten years in the penitentiary.

A brief summary of the evidence discloses that the father of appellant, Frank Rembert, Sr., said to the deceased, Hardwick, that he had "a good mind to sick his boys on him, damn scoundrel," or words to that effect. There is considerable controversy and contradiction in the evidence as to whether Frank Rembert, Sr., said, "I have a notion to sick my boys on you," or "to sick my boy on you," or "to sick that boy on you." A good deal of importance seemed to have been attached in the trial below to the peculiar language used by the father of appellant to the deceased. This occurred in the street near the sidewalk. The deceased went down the street, and appellant, a young man, followed him. After going a short distance they engaged in a personal difficulty, which attracted a crowd. Some of the evidence shows that Frank Rembert, Jr., also engaged in the trouble with the deceased. The facts further disclose the deceased

was a much stouter man than appellant, who was getting the better
of the fight and had appellant under his arm with his head down
and was beating him on the head with the butt end of a knife, the
knife being open. The deceased, however, was not using the blade of
the knife, but only the butt end. Frank Rembert, Sr., father of ap-.
pellant, was watching the difficulty, but took no part in it. Someone
said something about deceased having a knife in his hand when the
father of appellant rushed in and took the knife from him; and the
theory of the State further is at this point that the father stabbed
the deceased in the throat with it and once in the neck. The wound
in the neck did not seem to be considered of much importance. The
cut in the throat partly severed the windpipe. Subsequent to this
wound while in the hospital pneumonia set up and deceased died.
The doctor indicates that the pneumonia was brought about by suc-
tion of blood into the lungs from the wound. The doctors sewed up
the wound and in a fit of coughing or for some reason the stitches
became broken, the wound opened and the blood probably was sucked
into the lungs on that occasion. There is evidence also that while
they were fighting, deceased struck at appellant with the open knife
in his hand and appellant warding off the blow knocked the arm or
hand in which the knife was being held against his throat, and that
deceased was cut in that manner. This is a sufficient statement of
the case to review the questions suggested for reversal.

The court charged the jury with reference to murder in both de-
grees, and manslaughter as well as the law of principles. Among
other things, the court charged the jury as follows:

"If you believe from the evidence, beyond a reasonable doubt, that
the defendant acted alone, or acted with Frank Rembert, Sr., and
Frank Rembert, Jr., or either of them with a knife, the said knife
being a deadly weapon or instrument reasonably calculated and likely
to produce death by the mode and manner of its use, in a sudden
transport of passion, aroused without adequate cause, and not in de-
fense of himself against an unlawful attack or in defense of Frank
Rembert, Sr., or Frank Rembert, Jr., reasonably producing a rational
fear or expectation of death or serious bodily injury, with intent to
kill did cut and thereby kill Ed Hardwick as charged in the indict-
ment, you will find him guilty of murder in the second degree," etc.
The law of manslaughter was applied in the same way, and in the
same language as to the acting together of the parties, etc.

It is urged these charges are erroneous. We are of opinion that
the contention is correct. There is no evidence in this record that
we have been able to find that appellant in defense of Frank Rem-
bert, Sr., or Frank Rembert, Jr., cut or killed Ed Hardwick from any
standpoint. Appellant was not armed, that is, he did not use any
arms during the trouble. The nearest approach to his using arms
at all was that during the difficulty he ran his hand into his pocket
to get his knife and did get it, but immediately put it back in his

pocket without opening it. There is not any evidence in the record that we have been able to discover· that he was defending his father or brother. In fact, the evidence discloses that he was fighting with deceased, and that the father came to his rescue. This is the State's case. The case was submitted to the jury upon facts not borne out by the record, and upon issues not suggested by the testimony.

The court further charged with reference to self-defense that "if the defendant alone, or together with Frank Rembert, Sr., and Frank Rembert, Jr., or either of them, was engaged with the deceased in a personal encounter, and that the deceased had made an attack upon the defendant or Frank Rembert, Sr., or Frank Rembert, Jr., which, from the manner and character of it, either considered alone or in connection with the relative strength of the parties, caused the defendant or Frank Rembert, Sr., or Frank Rembert, Jr., or either of them, to have reasonable expectation or fear that death or serious bodily harm was about to be inflicted upon the defendant, or Frank Rembert, Sr., or Frank Rembert, Jr., by the deceased, and that acting under such reasonable expectation or fear the defendant or Frank Rembert, Sr., or Frank Rembert, Jr., cut the deceased with a knife and thereby killed the deceased, you will acquit the defendant."

The court further charged the jury that "the defendant, or Frank Rembert, Sr., or Frank Rembert, Jr., would be justified in killing the deceased if it is shown to have been done to prevent the deceased from murdering or maiming them, or either -of them, or inflicting upon them or either of them serious bodily injury. Or, if it is shown that at the time of the killing or immediately preceding such killing, deceased had made or was in the act of making some hostile demonstration towards the defendant or Frank Rembert, Sr., ' or Frank Rembert, Jr., such as would produce in their minds or in the mind of either of them a reasonable fear or expectation of death or some serious bodily injury, but in that case, to justify the killing, it must have reasonably appeared to the defendant and Frank Rembert, Sr., and Frank Rembert, Jr., from the acts or· words coupled with the acts of deceased that he intended to murder, maim or inflict some serious bodily injury upon the defendant or Frank Rembert, Sr., or Frank Rembert, Jr., and the killing must have taken place while the deceased was in the act of committing such offense or after some act done by him showing evidently an intention to commit such an offense. Therefore, if you believe from the evidence that the defendant, or Frank Rembert, Sr., or Frank Rembert, Jr., at the time of the homicide believed that his life was in danger, or that the life of either of them was in danger, or that they, or either of them, were in danger of serious bodily injury being inflicted upon them, or either of them, such fear being produced by hostile acts on the part of deceased, and that at the time the defendant or Frank Rembert, Sr., or Frank Rembert, Jr., cut and killed the deceased (if they did so cut and kill him), it reasonably appeared to them from all the circumstances

of the case, viewed from the standpoint of the defendant and from the standpoint of Frank Rembert, Sr., and Frank Rembert, Jr., that the deceased was about to cut the defendant or Frank Rembert, Sr., or Frank Rembert, Jr., or either of them with a knife, or if from the evidence you believe that at the time of the killing the deceased had made an attack upon the defendant, or Frank Rembert, Sr., or Frank Rembert, Jr., which from the manner and character of the same, and the relative strength of the parties, caused the defendant or Frank Rembert, Sr., or Frank Rembert, Jr., to have a reasonable expectation or fear of death or serious bodily injury and that acting under such reasonable expectation or fear, viewed from the standpoint of the defendant and Frank Rembert, Sr., and Frank Rembert, Jr., the defendant or Frank Rembert, Sr., or Frank Rembert, Jr., killed the deceased, then you will acquit the defendant."

Then follows the limitation upon the right of self-defense pretty much in the same language as in the previously quoted charges. The only evidence in the case that suggests that appellant was instrumental in bringing about the death of deceased was the fact that in warding off a blow struck at him by the deceased he accidentally caused the deceased himself to cut his own throat. There was one witness who so testified. But the testimony, generally speaking, was to the effect that appellant and deceased were fighting; that appellant did not use a knife, but deceased had an opened knife in his hand and this knife was taken from him by Frank Rembert, Sr., and used by him in stabbing the deceased. The evidence showed beyond any question that this was a fight engaged in by the two young men, and it may be on account of what the father said was the cause of his son, appellant, engaging in the fight. No witness testifies that appellant used a knife in the difficulty. That he was fighting alone with his fist a man much superior in strength, was getting the worst of the fight, and that his father rushed in and took deceased's knife from him and used it is the evidence. The evidence does not disclose, as far as we have been able to discover, there was any conspiracy to kill deceased, but the State's evidence excludes this idea, because the father did not undertake to enter into the trouble until his son was getting the worst of the trouble, and then disarmed deceased, and used the knife of deceased in inflicting the wound. There is no evidence justifying a charge that defendant killed or stabbed deceased in defense of his father or brother, or that he stabbed him at all. The case was tried upon false theories, so far as the charge is concerned, and authorized a conviction upon a state of facts not found in the record. We deem it unnecessary to go into a further discussion of the matter.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*